UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALEXANDER WALLS,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>CORECIVIC, INC.,<br><br>　　　　　　　　Defendant. | Case No. 2:14-cv-02201-KJD-PAL<br><br>**ORDER** |

Before the Court is Defendant CoreCivic, Inc.'s Motion for Summary Judgment (#56). Plaintiff Alexander Walls responded (#60), and CoreCivic replied (#68). For the reasons below, the Court determines that Mr. Walls has failed to demonstrate a genuine issue of material fact for either his negligence or intentional infliction of emotional distress claims. It therefore grants CoreCivic's motion for summary judgment in its entirety.

**I.　　Background**

In January of 2014, Plaintiff Alexander Walls was an inmate at Nevada Southern Detention Center, a correctional facility owned and operated by Defendant CoreCivic, Inc. On the evening of January 3, 2014, Mr. Walls was involved in three different fights. In the second fight, another inmate stabbed Mr. Walls in the left eye. The damage to Mr. Walls's left orbital globe was so extensive that doctors could not save his eye. That altercation—and CoreCivic's response to Mr. Walls's injuries—gave rise to this suit.

The underlying facts are relatively undisputed. Mr. Walls's first altercation took place in the shower. Mr. Walls described that fight as "beating [the other inmate's] ass." Inmates quickly intervened and told Mr. Walls to "take it to the cell." So, Mr. Walls "took it to the cell" of the other inmate. Before long, the two were fighting again. That altercation ended when the inmate brandished a prison shank and stabbed Mr. Walls in the left eye. Fortunately, Mr. Walls escaped

the cell and fled to the showers. Mr. Walls did not notify prison staff that he had been stabbed.

En route to the shower, an unknown inmate handed Mr. Walls a towel that he draped over his face concealing his injury. Mr. Walls washed his eye and cleaned the blood from his face and clothing. After leaving the shower, Mr. Walls did not notify prison staff of his injury. Rather, he returned to his cell where he attempted to bandage his eye using toilet paper and antibacterial ointment. After fashioning this makeshift bandage, Mr. Walls began packing his belongings to safeguard them in case prison officials punished him for fighting. He then left his cell without notifying prison officials of his injury.

At about 9:30 p.m., the third fight—a cellblock-wide brawl—erupted in the common area. Mr. Walls was also involved in this fight. Video surveillance captured him swinging a broomstick at other inmates. Prison staff used pepper spray to subdue the fighting inmates. Mr. Walls was among those pepper sprayed. Once the fighting was subdued, officers performed a cell-by-cell search for contraband. During that search, officers discovered Mr. Walls in his cell and handcuffed him. It was at this point that Mr. Walls first disclosed his injury to prison staff.

Mr. Walls's disclosure set into motion a chain reaction that ended with the complete surgical evisceration of his eye. Mr. Walls notified prison staff of his eye injury around 9:50 p.m. By 10:00 p.m., Mr. Walls was transferred to medical where he was examined by prison nurses. By 10:30 p.m., he was transferred to Desert View Hospital where he was triaged and examined. Doctors determined Mr. Walls needed specialized care. And within two hours he arrived at University Medical Center.[1] At UMC, doctors performed various tests to determine the extent of Mr. Walls's injuries. And at 5:17 a.m., Mr. Walls was taken into the operating room to remove his left eye.

After losing his eye, Mr. Walls brought this case claiming: (1) that CoreCivic negligently delayed his medical treatment; and (2) that such a delay constituted extreme and outrageous behavior.[2] CoreCivic now moves for summary judgment on each of Mr. Walls's claims.

---

[1] The two hour delay between his transfer from Desert View Hospital and UMC is consistent with the distance between Pahrump, Nevada and Las Vegas, Nevada.

[2] It appears that Mr. Walls attempted to amend his complaint to add additional causes of action against CoreCivic on November 13, 2017 (#35). However, Magistrate Judge Leen correctly denied the attempted

## II. Legal Standard

The Court construes Mr. Walls's pro se pleading liberally and in his favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Despite that leeway, Mr. Walls is still "bound by the rules of procedure." Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). Summary judgment is appropriate where there exists no genuine issue of fact and when the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing the absence of material fact. Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to show specific facts demonstrating a genuine factual dispute for trial. See Masushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court makes all justifiable inferences in favor of the nonmoving party. Matsushita, 475 U.S. at 587. However, the nonmoving party may not merely rest on the allegations of her pleadings. Rather, she must produce specific facts—by affidavit or other evidence—showing a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). And summary judgment is not appropriate if a reasonable jury could return a verdict for the nonmoving party. Liberty Lobby, 477 U.S. at 248.

## III. Analysis

### A. There is No Genuine Issue of Material Fact as to Mr. Walls's Negligence Claim

CoreCivic first moves for summary judgment on Mr. Walls's claim that prison staff negligently delayed medical treatment for the trauma he suffered to his left eye. CoreCivic's argument is twofold. First, it contends that even if it owed Mr. Walls a duty of care and he suffered an injury, there is no evidence that any CoreCivic breach actually or proximately caused that injury. Second, CoreCivic argues that any delay in medical treatment was due to Mr. Walls's own negligence and not any CoreCivic action or inaction. Although Mr. Walls filed an opposition to CoreCivic's motion for summary judgment, he did not include evidence to support either of his claims.

---

amendment as untimely (#52). Accordingly, Mr. Walls's negligence and intentional infliction of emotional distress claims are the only claims properly before the Court.

To survive summary judgment, Mr. Walls must demonstrate a genuine issue of material fact on each of the following elements of negligence: (1) the existence of a duty of care; (2) a breach of that duty; (3) legal causation; and (4) damages. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009). CoreCivic, on the other hand, need only negate one of those elements to warrant summary judgment. Perez v. Las Vegas Med. Ctr., 805 P.2d 589, 591 (Nev. 1991).

CoreCivic contends that Mr. Walls's failure to submit expert testimony on the applicable standard of care is enough to warrant summary judgment. It assumes that because Mr. Walls alleged that CoreCivic delayed his medical care that his negligence claim is actually a claim for medical malpractice. Such claims generally require expert testimony assist the jury in determining the level of care owed to a plaintiff. See Staccato v. Valley Hosp., 170 P.3d 503, 506 (Nev. 2007) (generally expert standard-of-care testimony required in medical malpractice actions). However, expert testimony is not necessary when the standard of care is obvious or common knowledge to a lay jury. Fernandez v. Admirand, 843 P.2d 354, 358 (Nev. 1992) (expert testimony required in a medical malpractice action unless disputed treatment "a matter of common knowledge").

Mr. Walls's failure to provide expert testimony—by itself—is not fatal to his negligence claim. First, there is evidence that Mr. Walls attempted to provide such testimony through his surgeon, Dr. Kelly. It is a disputed fact whether Dr. Kelly told Mr. Walls that his eye would have been salvageable had Mr. Walls arrived earlier. See Compl., ECF No. 1, at 3. Second, a reasonable jury could conclude that Mr. Walls's negligence claim is broader than just medical malpractice. Medical malpractice is the failure of a "provider of health care" to use reasonable care in rendering medical services. NRS 41A.05. The statute limits medical malpractice actions to "provider[s] of health care." NRS 41A.017 (enumerating professionals who fall under the definition of "provider of healthcare"). Here, Mr. Walls claims the entire prison staff negligently delayed his treatment. He does not limit this claim to prison officials who were health care providers under the statute. Accordingly, Mr. Walls's failure to provide expert testimony does not doom his negligence claim.

Mr. Walls's failure to notify prison staff of his injury and his active concealment of that injury, however, are fatal to his negligence claim. Generally, a defendant's negligence is a question of fact for the jury. However, it becomes a question of law when reasonable minds could reach but one result. Nehls v. Leonard, 630 P.2d 258, 261 (Nev. 1981). Such is the case here. Mr. Walls's own testimony demonstrates that he delayed his own medical treatment by failing to alert prison staff of his injury and concealing that injury.

In his opposition, Mr. Walls attempts to refute his own deposition testimony and claims that CoreCivic and an unnamed prison guard coerced him into testifying.[3] Additionally, Mr. Walls claims that the deposition transcript is inaccurate. As a result, he argues, the deposition is "tainted evidence" and inadmissible against him. See Plaintiff's Opposition to Def.'s Mot. Summ. J., ECF No. 64, at 1–2. Given that Mr. Walls is a pro se party, the Court broadly construes these arguments as a motion to suppress his deposition testimony. See Erickson, 551 U.S. at 94.

A party may move to suppress deposition testimony based on an errant transcription. See Fed. R. Civ. P. 32(4). However, the suppressing party must object promptly. Id. And failure to promptly object results in a waiver of that objection. Id. Here, Mr. Walls had the opportunity to correct any errors in his transcribed testimony on an errata form included with the deposition transcript. That form provided Mr. Walls the opportunity to identify the incorrect lines of transcript and provide corrections. See Walls Dep., Def's Mot. Summ. J, Exh. 2, at 26–27, ECF No. 56 (Walls Dep.). Mr. Walls indicated that various lines of transcript were incorrect but did not provide corrections for those errors. Id. As a result, the reporter could not make changes to the transcript.

After reviewing the errata form and the undisputed portion of Mr. Walls's deposition, the Court finds that suppression is unwarranted. First, Mr. Walls had the opportunity to provide an accurate record on the errata form. But he refused to do so. Rather, Mr. Walls simply noted the alleged inaccuracies without providing what the correct testimony actually was. Next, as the

---

[3] There is no evidence that Mr. Walls was coerced or intimidated into answering questions by prison officials or CoreCivic counsel. In fact, CoreCivic offered to contact Magistrate Judge Leen during the deposition to settle Mr. Walls's concerns. He elected not to contact Judge Leen and continued answering CoreCivic's questions.

plaintiff in this case, Mr. Walls has the burden to prove that CoreCivic negligently delayed his medical treatment. He cannot satisfy that burden without providing evidence. His allegations that the deposition was compulsory, or a product of intimidation, do not remove from him the requirement to prove each element of his claim. Finally, even if the Court disregarded the portions of his testimony that Mr. Walls disputes, there remains enough undisputed testimony to grant summary judgment. Therefore, the Court declines to suppress Mr. Walls's deposition testimony.

The undisputed portion of Mr. Walls's deposition testimony shows that he failed to notify prison staff of his injury and, in fact, actively concealed that injury to evade discipline. Mr. Walls does not dispute that he was involved in a fight in the showers. Walls Dep. 78:6–17. After that fight, he admits that he visited the other inmate's cell to defuse the situation. Id. 79:11–12, 80:13–8:9. When he was unable to defuse the situation, the two inmates fought again. That fight ended when Mr. Walls was stabbed in the eye. Id. 82:25–83:2. After being stabbed, Mr. Walls fled the cell and covered his face with a towel and later with a t-shirt. Id. 85:1–7; 89:13–15. He then washed his eye out in the shower and attempted to clean up the blood. Id. 87:10–25. After showering, he returned to his cell and attempted to bandage his eye using toilet paper and anti-bacterial ointment. Id. He then began packing his belongings because he knew he would be disciplined for fighting and did not want his things stolen. Id. 91:2–8.

To that point, Mr. Walls still had not alerted prison officials of his injury. Id. 80:13–23, 86:11–87:3. He was then involved in a cell-wide brawl that required prison officers to deploy pepper spray to disperse the crowd. Id. 96:5–12. Mr. Walls fled to his cell where officers detained him. Id. 97:6–18. It was at this point that Mr. Walls finally alerted officers that he was injured. Id. 96:16–18, 97:6–18. And when he told the officer he was stabbed in the eye, the officer immediately told him he was going to medical. Id. 98:14–18.

CoreCivic did not delay Mr. Walls's medical care. On the contrary, Mr. Walls's own testimony shows that prison staff moved quickly to get him the medical attention he needed. Id. CoreCivic's uncontroverted evidence supports this. According to prison records, the cell-block brawl began at approximately 9:34 p.m. See Def's Mot. Summ. J, Exh. 1, at 2, ECF No. 56. Mr.

Walls disclosed the stabbing to officers at approximately 9:50 p.m. Id. at 3. By 10:30 p.m., the medical staff examined Mr. Walls's eye and contacted the on-call physician. See Def's Mot. Summ. J, Exh. 3, at 3, ECF No. 56. By 11:15 p.m., Mr. Walls was transferred to Desert View Hospital. See Def's Mot. Summ. J, Exh. 4, at 5, ECF No. 56. He would be transferred again to UMC where he underwent surgery to remove his eye.

Contrary to Mr. Walls's allegations, the evidence demonstrates that CoreCivic staff worked quickly to get him the care he needed. And when officials realized they could not adequately treat Mr. Walls inside the facility, they transferred him to two different hospitals where he was evaluated and treated by multiple physicians. The Court finds that no reasonable jury could determine that CoreCivic negligently delayed Mr. Walls's treatment. Therefore, the Court grants summary judgment on his negligence claim.

### B. There is No Genuine Issue of Material Fact as to Mr. Walls's Claim of Intentional Infliction of Emotional Distress

CoreCivic next moves for summary judgment on Mr. Walls's claim for intentional infliction of emotional distress. To survive summary judgment, Mr. Walls must demonstrate a triable issue of fact on each of the following elements: (1) that CoreCivic engaged in extreme and outrageous conduct with the reckless disregard to causing emotional distress; (2) that Mr. Walls suffered extreme emotional distress; and (3) that CoreCivic's actions caused that distress. Schoen v. Amerco, Inc., 896 P.2d 469, 477 (Nev. 1995). CoreCivic need only negate one element to prevail. Perez, 805 P.2d at 591.

CoreCivic argues that Mr. Walls has failed to provide evidence that any CoreCivic employee acted in a way that was extreme or outrageous related to Mr. Walls's treatment. The Court agrees. Given that Mr. Walls has failed to demonstrate even negligence on the part of CoreCivic or its employees, the Court finds that he has similarly failed to show a genuine issue of material fact that CoreCivic's actions were extreme or outrageous. Therefore, the Court grants summary judgment on Mr. Walls's claim for intentional infliction of emotional distress.

///

///

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that CoreCivic, Inc.'s Motion for Summary Judgment (#56) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

Dated this 18th day of October, 2018.

_____
Kent J. Dawson
United States District Judge